UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIFFANY M.,[1]

                              Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

DECISION AND ORDER

1:20-CV-0743 (CJS)

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Dec. 28, 2020, ECF No. 10; Def.'s Mot., Feb. 26, 2021, ECF No. 11. Plaintiff argues that the Commissioner's denial of her application for SSI benefits should be vacated, and the matter remanded for further administrative proceedings because (1) the ALJ erred in failing to support his RFC with a medical expert's opinion or citation to supporting record evidence, and (2) the ALJ failed to accommodate Plaintiff's need for treatment in his RFC determination. Pl. Mem. of Law, 17–24, Dec. 28, 2020, ECF No. 10-1. The Commissioner disputes Plaintiff's contentions, and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 10] is denied, and the Commissioner's motion [ECF No. 11] is granted. The Clerk of Court is directed to close this case.

BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Standard for Disability Determination

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether an SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts

2

to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Procedural History

In the present case, Plaintiff filed her application for Supplemental Security Income ("SSI") on July 18, 2016, at the age of 19 years old, listing her birth on April 9, 1997 as the alleged onset date. Transcript ("Tr."), 88–90, Oct. 26, 2020, ECF No. 9. Plaintiff claimed that she was eligible for benefits due to bilateral hearing loss, severe mental illness, multiple developmental issues, major depressive disorder, ADHD, reactive attachment disorder, oppositional defiance disorder, severe learning disabilities, severe memory impairment, severe adaptive deficits, sensory sensitivity, chronic ear infections, comprehension deficits, delayed adaptive behavior and independent living skills, and anxiety. Tr. at 90–91. On October 26, 2016, the Commissioner notified Plaintiff of the following determination: "based on your age of 19 years, your education of 12 years, and your experience, you can perform a job in which your hearing difficulty would not interfere with your work . . . you would have simple tasks . . . the work situation would not make your condition worse . . . you would not work directly with the public, and . . . you would not work closely with other people." Tr. 109. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 112.

Plaintiff's request was approved, and the hearing was held by videoconference on August 15, 2018. Tr. 30. Plaintiff appeared with her counsel, Plaintiff's mother appeared as a witness, and an impartial vocational expert also participated by phone. Tr. 32. In her opening statement on Plaintiff's behalf, Plaintiff's counsel stated:

> Your Honor, we have a young individual here who has filed SSI on the basis of her mental health and intellectual disorders. She has been diagnosed with borderline intellectual functioning, bipolar disorder, ADHD. She has had a variety of supports and treatment throughout the years, so it's our contention that she's not going to be able to work on a regular and continuous basis without extensive support at this time.

Tr. 34. Thereafter, the ALJ asked Plaintiff why she believed that she was disabled, and Plaintiff stated, "I have bipolar diagnosis . . . . I physically and mentally cannot work because of bipolar." Tr. 38.

During the course of the hearing, Plaintiff testified as follows. She always had trouble handling her mood or behavior when she was in school, and consequently received special education services in elementary and middle school, and went to "resource room" in high school. Tr. 40. She finished twelfth grade and, despite wanting to quit her senior year, obtained a certificate in animal science through a vocational program run by the local Board of Cooperative Education Services ("BOCES"). Tr. 41. Plaintiff has had a few short-lived jobs: she had an internship with a local dog groomer through her BOCES animal science program that went "not very well . . . [I] don't take well to being told what to do" (Tr. 42), she had a part-time job at Shop'n'Save that she stopped because she "[c]ouldn't handle the pressure" and "I don't like being told what to do" (Tr. 38–39), and she was let go from her job cleaning her parents' church because she could not do the job independently (Tr. 43).

As to her activities of daily living, Plaintiff testified that she lives in an apartment with her fiancé, and helps to feed and care for their dog and their cat. Tr. 36. She is also responsible for cleaning their apartment, but is not responsible for cooking or grocery shopping because her fiancé is the only one with an income, and she can't remember

very well what the couple needs. Tr. 43–44. Her fiancé pays the bills because she has no money and has trouble with math. Tr. 51. Plaintiff likes to do laundry, but she tends to forget that she has to do it. Tr. 44. She washes the dishes, "just not very often," and a month may go by before she does them. Tr. 45. While her fiancé is at work, Plaintiff goes on walks, listens to music, colors, draws, sews "quilts and stuff," watches movies, goes on Facebook, and plays games on her phone. Tr. 57–58. She and her fiancé try to go to church every Sunday. Tr. 58.

Plaintiff was adopted by her parents, and has been in counseling for mental health treatment "probably since middle school" because her "behaviors were uncontrollable . . . ." Tr. 47. She has trouble focusing on things in general because of her ADHD. Tr. 51. For example, she has never gotten a driver's license because she can't trust herself driving, she feels like she would endanger other people because she can't focus. Tr. 51. Since she moved away from home, she stopped taking medication for her ADHD because it turned her into a "zombie." Tr. 52. Plaintiff also has issues with anxiety, and starts having an attitude when anxious. Tr. 53.

Plaintiff's mother ("Mother") also testified at the hearing. Mother testified that Plaintiff was a lot more stable when she was living at her parents' house and taking her medication than she is now, and that Plaintiff lives a "very delusional life." Tr. 60. She stated that for years "we thought she was just a chronic liar . . . . [b]ut it's obvious to me now that it's a delusional world she lives in that's her reality." Tr. 68. She said that Plaintiff "doesn't see what reality is," "cannot be committed to anything long-term," "has never stuck with anything," and "has hardly any responsibility factor." Tr. 61. Mother has not visited Plaintiff at her apartment often, but when she did visit she noticed that the windows

5

had no curtains, there was "a mountain of dishes that were just like off the charts crazy and moldy," and the apartment was "very smelly, and it's not hygiene-friendly . . . ." Tr. 62–63. Finally, Mother testified that Plaintiff is months and months overdue for her hearing appointment, and that "[s]he has medical needs that [are] not being taken care of . . . [because] she's in a delusional place . . . ." Tr. 72. Ultimately, Mother helped Plaintiff file for SSI at the suggestion of a Dr. Zuckerman, who found that Plaintiff had severe learning disabilities in multiple areas, as well as severe mental illness. Tr. 75. According to Mother, Dr. Zuckerman told her, "you and your husband won't always be there with her . . . . [so] she needs help to take care of her needs in the future. If you haven't applied [for SSI], you need to." Tr. 75.

In his decision on January 3, 2019 denying SSI benefits to Plaintiff, the ALJ found at step one of the five-step evaluation process, that Plaintiff was a 21-year-old individual with a twelfth-grade education who had not engaged in substantial gainful activity since her alleged onset date of April 9, 1997 (i.e., her birth). Tr. 17. At step two, the ALJ determined that Plaintiff has the following severe impairments: bilateral sensorineural hearing loss, specific learning disorder in reading and writing, attention-deficit hyperactivity disorder, disruptive mood dysregulation disorder with anxious distress, major depressive disorder, intermittent explosive disorder, and an unspecified neurodevelopmental disorder. Tr. 17.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 33. In so finding, the ALJ considered § 2.10 of the listings and found that Plaintiff's hearing impairment is not a

disability under the law. Tr. 18. In addition, the ALJ utilized the "special technique" required by 20 C.F.R. § 416.920a,[2] and determined that Plaintiff's alleged mental impairments did not meet or medically equal the criteria of listings for neurocognitive disorders, depressive/bipolar/related disorders, or anxiety obsessive-compulsive disorder. Tr. 18. The ALJ found that Plaintiff's mental impairments caused "no more than mild limitations" in understanding, remembering or applying information; a moderate limitation in interacting with others; "no more than a moderate limitation" in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing herself. Tr. 18–19. The ALJ also found that the evidence failed to establish the presence of any "Paragraph C" criteria indicating a "serious and persistent" mental disorder. Tr. 19.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff has the residual functional capacity[3] ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [S]he can have exposure to no more than a moderate noise level; and only occasional exposure to dust, fumes or other pulmonary irritants. In addition, she is limited to simple (as defined in the D.O.T. as SVP ratings 1 and 2),

---

[2] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 416.945.

routine, and repetitive tasks in a work environment that is not fast paced or has strict production quotas (e.g., work that is goal based or measured by end result). Additionally, she is limited to no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors. Further, she is limited to jobs where changes in work setting or processes are few, if any, and any changes are explained in advance. Also, she is limited to jobs where job responsibilities are performed without close teamwork, tandem work or over-the-shoulder supervision[.]

Tr. 19. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 23. However, based on the RFC finding, Plaintiff's age, education, and work experience, and on the testimony of the vocational expert, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a store laborer and a laundry worker. Tr. 24. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of SSI. Tr. 24–25.

On April 14, 2020, the Commissioner's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

## DISCUSSION

As indicated above, in the present case Plaintiff maintains that the Commissioner's denial of her application for SSI benefits should be vacated, and the matter remanded for further administrative proceedings because of two alleged legal errors: (1) the ALJ failed to support his very specific RFC determination with respect to Plaintiff's mental impairments with a medical expert's opinion or citation to supporting record evidence, and (2) the ALJ's RFC determination failed to accommodate Plaintiff's need for treatment. Pl. Mem. of Law at 17–24.

Support for the ALJ's Specific RFC Determination

Plaintiff notes that the ALJ's RFC determination contained several specific limitations regarding Plaintiff's mental functioning: namely, that Plaintiff must not have "over-the-shoulder supervision," could interact with supervisors only occasionally, and did not require excess supervision. Pl. Mem. of Law. at 22. Plaintiff states that "these [limitations] appear to have been gleaned from the ALJ's own interpretation of the

Plaintiff's records," and not any particular medical opinion. Pl. Mem. of Law at 18. As a result, Plaintiff maintains that "[i]t was reversible error for the ALJ to interpret the medical records himself to assess Plaintiff's specific limitations from her mental impairments." Pl. Mem. of Law at 18.

In response, the Commissioner argues that the ALJ did not commit legal error because "[n]othing anywhere in the [Social Security] Act, regulations, or rulings indicates that the ALJ must rely on a medical source opinion in assessing RFC. On the contrary, requiring the ALJ to rely on a medical source opinion in assessing RFC is contradictory to agency rules." Def. Mem. of Law, 8, Feb. 26, 2021, ECF No. 11-1. The Court agrees with the Commissioner that the ALJ did not commit legal error in assessing Plaintiff's RFC.

A claimant's residual functional capacity is the most that the claimant can still do despite his or her impairments, and is assessed "based on *all* of the relevant medical and other evidence" in the claimant's case record. 20 C.F.R. § 416.945(a)(1)–(3) (emphasis added). An ALJ cannot, of course, arbitrarily substitute his own lay opinion for competent medical opinion evidence. *See, e.g., Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting *McBrayer v. Secretary of Health and Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983)). For instance, the ALJ is required to give more weight to the medical opinions of a claimant's treating sources where they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). Nevertheless, although the ALJ must consider medical source opinion in formulating a claimant's RFC, the final responsibility for deciding the issue is reserved to the ALJ. 20 C.F.R. §

416.927(d)(2). Consequently, the ALJ's RFC determination need not "perfectly correspond" with any of the medical opinions in the record, so long as the ALJ "took account of the opinions of all . . . experts and the notes for other treatment providers . . . ." *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013).

      In this case, the ALJ did not run afoul of these rules by crafting an RFC based only "on his own judgment," contrary to what Plaintiff maintains. Rather, the ALJ made clear the basis for the specific findings in his RFC when he stated that Plaintiff's

> own description of her activities, coupled with the findings on examination . . . demonstrate that she can perform functions within the assessed residual functional capacity . . . . [including that] she is limited to tasks with no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors with no close teamwork, tandem work, or over-the-shoulder supervision.

Tr. 20–21.

      With respect to Plaintiff's "own description of her activities," Plaintiff testified at the hearing before the ALJ that she always had trouble handling her mood or behavior when she was in school (Tr. 40), that her internship with a local dog groomer went "not very well . . . . [I] don't take well being told what to do" (Tr. 42), and that her part-time job at Shop'n'Save ended because she "[c]ouldn't handle the pressure" and "I don't like being told what to do" (Tr. 38–39). Additionally, there is ample evidence in the records of various of Plaintiff's treatment providers supporting the RFC. Craig Zuckerman, D.Ed., stated in his psychological evaluation of Plaintiff in 2016 that she "has a long term pattern of . . . aggressive behavior, severe non-compliance . . . . [and] does not tolerate . . . orders very well." Tr. 330. Treatment notes from Plaintiff's sessions with psychiatrist John McAlevey and licensed psychologist Betsy McDonnell from the Zoar Valley Clinic indicate that

Plaintiff has a "long history of anger management problems" (Tr. 478), and that Plaintiff "reports having difficulty managing her anger at times . . ." (Tr. 486). Indeed, the records indicate Plaintiff worked with the mental health team at the Zoar Valley Clinic for over a year on these issues between 2016–2017. *See, e.g,* Tr. 458–547 (records from Plaintiff's appointments with Dr. McDonnell and Dr. McAlevey). Plaintiff also continued to work on managing her anger and her "intermittent explosive disorder" with BestSelf Behavioral Health in 2018. Tr. 558–565.

In sum, the ALJ's RFC determination was not in error because even though it did not perfectly correspond to any one medical opinion, it nevertheless took account of expert opinion and treatment notes and was supported by substantial evidence.

<u>The ALJ's Consideration of Plaintiff's Need for Medical Treatment</u>

Plaintiff also maintains that the ALJ committed reversible legal error when he "found Plaintiff needed ongoing, longstanding therapy, [but] failed to accommodate her need for treatment in the RFC determination." Pl. Mem. of Law at 22. The record indicates that Plaintiff "was regularly encouraged to attend counseling more frequently than once a month," yet the vocational expert testified that more than one absence per month would be work preclusive. *Id.* (citing the vocational expert's testimony at Tr. 85); *see also* Tr. 564 (indicating Plaintiff is seen once a week for individual therapy). Therefore, Plaintiff argues that this Court should rule with other "[c]ourts within the Second Circuit [that] have remanded similar cases where ALJs have ignored the impact regular medical treatment would have on a sick person's ability to maintain a job . . . ." Pl. Mem. of Law at 24 (citing *Wiltsie v. Comm'r of Soc. Sec.*, No. 17-CV-1201-LVJ, 2019 U.S. Dist. LEXIS 118974, at *20–21 (W.D.N.Y. July 16, 2019); *Hayden v. Comm'r of Soc. Sec.*, 338 F. Supp.3d 219,

12

138 (W.D.N.Y. 2018)).

Another court in this district recently addressed an argument similar to Plaintiff's in

a case involving somewhat similar circumstances:

> As other courts have recognized in rejecting similar arguments, it is possible that such appointments could have been completed during non-work hours. *See Cavalieri v. Comm'r of Soc. Sec.*, No. 17-CV-812, 2019 WL 2710110, at *4 (W.D.N.Y. June 28, 2019) ("Plaintiff has not demonstrated she would need to miss an entire day of work for each doctor's visit, examination, or test...."); *Robbins v. Saul*, No. 18-CV-6592, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) ("The record does not indicate ... that any of the office visits ... resulted in her missing any work, let alone a 'full day' of work." (collecting cases)). Plaintiff fails to cite any evidence to the contrary. For instance, Plaintiff has not cited to a medical opinion finding he would need to miss work to attend his medical appointments. *Cf. Susan B. v. Comm'r of Soc. Sec.*, No. 19-CV-80, 2021 WL 248752, at *11 (D. Vt. Jan. 26, 2021) ("Plaintiff's attendance at medical appointments is consistent with Dr. Baker's assessment that she would need to miss several days of work per month, in part to attend those appointments."). Accordingly, Plaintiff has not demonstrated the ALJ committed error in [not] considering Plaintiff's medical appointments.

*Jason R. v. Comm'r of Soc. Sec.*, No. 19-CV-1641-FPG, 2021 WL 1131265, at *7

(W.D.N.Y. Mar. 24, 2021). The Court finds this reasoning persuasive.

In the present case, Plaintiff rightly notes that the ALJ found that Plaintiff requires

"prescribed medication and ongoing and longstanding therapy" to help her deal with her

mental impairments. Pl. Mem. of Law at 22 (citing the ALJ's evaluation of the consultative

psychological examiner's medical opinion at Tr. 23). However, Plaintiff overlooks the

details of Plaintiff's therapy: the treatment notes in the record from Plaintiff's therapy

indicate that her appointments lasted only about an hour. For example, a review of the

records from Plaintiff's treatment at the Zoar Valley Clinic indicate the following: on March

14, 2016, Plaintiff had a 40 minute session with Dr. McDonnell (Tr. 348); on March 28,

2016, Plaintiff's session with Dr. McDonnell lasted an hour (Tr. 349); on April 11, 2016,

Plaintiff's session with Dr. McDonnell lasted 55 minutes (Tr. 352); on April 14, 2016, Plaintiff's medication consult with Dr. McAlevey lasted 30 minutes (Tr. 351); in late April and May, Plaintiff's three sessions with Dr. McDonnell lasted an hour each (Tr. 353, 355, 356); on June 9, 2016, Plaintiff's medication consult with Dr. McAlevey again lasted only 30 minutes; and so on. Plaintiff fails to cite any evidence that she would require more intensive treatment that would require greater absenteeism, or that such appointments would not be available outside working hours.

Accordingly, the Court finds that Plaintiff has not met her burden of showing that her treatment would require more than one absence per month. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (citing 42 U.S.C. § 423(d)(5)) (finding the claimant has the duty of proving a more restrictive RFC than the RFC formulated by the ALJ).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that, in accordance with this Decision and Order, Plaintiff's motion for judgment on the pleadings [ECF No. 10] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted. The Clerk of Court is directed to close this action.


DATED:      September 20, 2021
            Rochester, New York


                              CHARLES J. SIRAGUSA
                              United States District Judge